United States Court of Appeals,

Fifth Circuit.

No. 94-40592

Summary Calendar.

Lolo MAMOKA, Yoni Mamoka and Amit Mamoka, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Jan. 26, 1995.

Petition for Review of an Order of the Board of Immigration
Appeals.

Before JONES, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:

Lolo Mamoka and her sons, Yoni and Amit Mamoka, challenge the
Board of Immigration Appeals' denial of Lolo Mamoka's application
for adjustment of status and all three petitioners' requests for
voluntary departure.  We DENY the petition.

I.

Lolo Mamoka is a native of Iraq and a citizen of Israel;  her
sons, Yoni and Amit Mamoka, are natives and citizens of Israel.
Lolo Mamoka, her sons and her then ex-husband first entered the
United States in 1984 "to make [a] better life", but on visitors'
visas.  Although ordered by immigration authorities to leave the
United States within one month, Lolo Mamoka remained in the country
with her family until 1987, when her ex-husband returned to Israel
with their children.  Lolo Mamoka joined them four months later.

In December 1988, Lolo Mamoka returned to the United States on
a visitor's visa;  her ex-husband and their children joined her

1

shortly thereafter.[1]  Although she was authorized to remain in the United States only until mid-June 1989, Lolo Mamoka has not departed.

In the interim, Mr. Mamoka was convicted in March 1991 for making false and misleading statements to the INS, and was sentenced to two years in the custody of the Attorney General.  He moved to postpone surrender under the condition that the entire family would return voluntarily to Israel before July 1, 1991.  Mr. Mamoka returned to Israel in 1991, as agreed;  but, as noted, Lolo Mamoka and her sons stayed in the United States.

In 1991, Yoni and Amit Mamoka returned to Israel to visit their father.  When they were unable to obtain visas to return to the United States, Lolo Mamoka arranged to have them smuggled in through Mexico.  The boys were apprehended in Mexico and placed in the custody of Mexican immigration authorities.  Arrangements were made to fly them back to Israel, but during a stopover at Kennedy Airport in New York on their way back to Israel, they escaped from INS custody, and called their mother in Houston;  she arranged to have a friend pick them up.  The next day, Lolo Mamoka flew to New York;  and she and her sons returned to Houston.  Shortly thereafter, they were arrested by immigration authorities.

On August 21, 1992, the INS ordered Lolo Mamoka to show cause why she should not be deported for remaining in the United States longer than she was authorized to stay;  the show cause order was

_____

[1]Lolo Mamoka and her ex-husband remarried in 1989, and were divorced in October 1992.

amended to include her sons. At a hearing on November 4, 1992, Lolo Mamoka admitted the allegations in the show cause order, and her sons admitted entering the United States without inspection. The hearing was continued to allow the petitioners to apply for suspension of deportation and voluntary departure.

That December, Lolo Mamoka married Robert Mace, a United States citizen and paraplegic, confined to a wheelchair since 1980. On December 22, Mace filed immediate relative visa petitions for his wife and her sons. On January 28, 1993, Lolo Mamoka applied for adjustment of her status to that of lawful permanent resident, based upon her marriage. The INS approved the immediate relative visa petitions in March and April 1993.

The deportation hearing was reconvened in June 1993. The Immigration Judge denied Lolo Mamoka's application for adjustment of status and all three petitioners' requests for voluntary departure, stating that she was "flabbergasted" by the petitioners' "blatant" disregard for the immigration laws and their "outrageous" behavior. The Board of Immigration Appeals affirmed the decision.

## II.

Lolo Mamoka contends that the recent amendment to § 245 of the Immigration and Nationality Act (INA) abolished "preconceived intent" to remain in the United States as a basis for denying adjustment of status, and that the BIA abused its discretion by failing to address adequately significant equities in her case, by attributing her sons' misconduct to her, and by departing from its own precedent.

We address first whether we have jurisdiction to consider the petition for review. *See United States v. Garcia-Machado,* 845 F.2d 492, 492 (5th Cir.1988) ("This Court must examine the basis of its jurisdiction, on its own motion, if necessary."). The Mamokas petitioned for review on June 24, 1994; but, on October 11, they filed a motion with the BIA to reopen the proceedings and reconsider its order.

Our court has not addressed the effect of filing a motion to reopen on the finality of a deportation order. The Immigration and Nationality Act provides that "whenever a petitioner seeks review of an order under this section, any review sought with respect to a motion to reopen or reconsider such an order shall be consolidated with the review of the order." 8 U.S.C. § 1105a(a)(6). Regulations promulgated by the INS provide that "[t]he decision of the Board shall be final except in those cases reviewed by the Attorney General in accordance with paragraph (h) of this section," 8 C.F.R. § 3.1(d)(2), and that "[t]he filing of a motion to reopen or a motion to reconsider shall not serve to stay the execution of any decision made in the case." *Id.* § 3.8(a).

When a motion to reopen is filed after a timely petition for review has been filed, other circuits are in agreement that the motion to reopen does not affect the finality of a final deportation order. *See Arango-Aradondo v. I.N.S.,* 13 F.3d 610, 615 (2d Cir.1994); *Berroteran-Melendez v. I.N.S.,* 955 F.2d 1251, 1254

(9th Cir.1992); *Alleyne v. I.N.S.,* 879 F.2d 1177, 1180-82 (3d Cir.1989).[2] We agree; because the Mamokas filed a timely petition for review before moving to reopen, the deportation order is final, and we have jurisdiction to review it.

## B.

Lolo Mamoka contends that the denial of her application for adjustment of status violates Congress' intent, expressed in the recent amendment to § 245 of the INA, to abolish "preconceived intent" as a basis for denial of that adjustment. The amendment makes it possible for persons in the United States who otherwise are entitled to apply for an immigrant visa to apply for adjustment of status without leaving the country. Pub.L. No. 103-317, § 506(b), (c), 108 Stat. 1765 (Aug. 26, 1994).

We agree with the INS that this issue is not properly before us. The amendment was enacted on August 26, 1994, after Mamoka

[2]On the other hand, the Ninth and Eleventh Circuits have held that a deportation order is not final and appealable when a motion to reopen is filed *prior to* filing a petition for review. *See Fleary v. I.N.S.,* 950 F.2d 711, 713 (11th Cir.1992); *Jian Gang Chu v. I.N.S.,* 875 F.2d 777, 779-80 (9th Cir.1989). In contrast, the Third, Sixth, Seventh, Eighth, and Tenth Circuits hold that the finality of a deportation order is not affected by the petitioner moving to reopen prior to filing a petition for review. *See Stone v. I.N.S.,* 13 F.3d 934, 939 (6th Cir.), *cert. granted,* --- U.S. ----, 114 S.Ct. 2098, 128 L.Ed.2d 661 (1994); *Bauge v. I.N.S.,* 7 F.3d 1540, 1541-42 (10th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 1605, 123 L.Ed.2d 167 (1993); *White v. I.N.S.,* 6 F.3d 1312, 1317 (8th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2162, 128 L.Ed.2d 886 (1994); *Akrap v. I.N.S.,* 966 F.2d 267, 271 (7th Cir.1992); *Nocon v. I.N.S.,* 789 F.2d 1028, 1032-33 (3d Cir.1986). *Cf. Gebremichael v. I.N.S.,* 10 F.3d 28, 33 n. 13 (1st Cir.1993) (staying petition until BIA resolved petitioner's motions, and consolidating initial petition with that from BIA's denial of motion for rehearing). We express no opinion on whether filing a motion to reopen before a petition for review is filed affects the finality of the BIA's decision.

sought review of the BIA's decision;  in fact, the amendment is the basis for her pending motion to reopen.  Because the BIA has not ruled on the issue, we will not consider it.[3]  *See* 8 U.S.C. § 1105a(c) ("An order of deportation ... shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him");  *Faddoul v. I.N.S.,* 37 F.3d 185, 190 (5th Cir.1994) ("The proper venue for proffering new evidence is ... the BIA through a motion to reopen the case.");  *Yahkpua v. I.N.S.,* 770 F.2d 1317, 1320 (5th Cir.1985) (petitioner "may not introduce on appeal issues that were not presented to or considered at the administrative level");  *Arango-Aradondo v. I.N.S.,* 13 F.3d at 614 (declining to address ineffectiveness of counsel claim until BIA had considered it).

## C.

Lolo Mamoka contends that the Board abused its discretion by denying her application for adjustment of status, because it failed to address adequately significant equities in her case, attributed her sons' misconduct to her, and departed from its own precedent. An applicant who meets the statutory requirements for adjustment of status is eligible for, but not entitled to, discretionary relief. *See Patel v. I.N.S.,* 738 F.2d 239, 240 (7th Cir.1984) (citing *United States ex rel. Hintopoulos v. Shaughnessy,* 353 U.S. 72, 77, 77 S.Ct. 618, 621, 1 L.Ed.2d 652 (1957)).  "The applicant bears the

---

[3]The petitioners assert that the recent amendment to § 245 of the INA makes Yoni and Amit Mamoka eligible for adjustment of their status.  As stated, the applicability of that amendment, which is the subject of the pending motion to reopen, is not properly before us.

burden of proving that his application merits a favorable exercise of discretion, which is an extraordinary act and a matter of grace." *Id.* at 242. It is undisputed that Lolo Mamoka satisfies the statutory requirements for adjustment of status. The BIA's determination that the petitioners do not warrant discretionary relief is reviewable only for abuse of discretion. *See I.N.S. v. Bagamasbad,* 429 U.S. 24, 24, 97 S.Ct. 200, 200, 50 L.Ed.2d 190 (1976); *Patel,* 738 F.2d at 242.

Lolo Mamoka contends that the BIA failed to address or give appropriate weight to the following equities: (1) the reasons she overstayed her visa and arranged to smuggle her children back into the United States—her ex-husband's alcoholism and his conviction for violations of United States Immigration law; (2) the difficulties the family would encounter if her current husband, who is a paraplegic and permanently confined to a wheelchair, were separated from her; and (3) the fact that, except for a year and a half spent in Israel, she and her children have lived in the United States for ten years, and her children have attended public school in Texas. Contrary to Lolo Mamoka's assertion, the BIA expressly acknowledged that a "significant equity" was presented by Mace's disability, but found that it was insufficient to outweigh her "blatant disregard for our immigration laws".

The BIA did not abuse its discretion by failing to specifically address Lolo Mamoka's ex-husband's alcoholism and criminal conviction, or her long period of illegal residence in the United States. In her brief filed with the BIA, she did not refer

7

to her ex-husband's alcoholism or criminal conviction, and she has made no attempt to explain, either to the BIA or to this court, how her ex-husband's alcoholism or criminal conviction excuse or mitigate her continuous efforts to evade the immigration laws of the United States. She mentioned her length of residence only once in her brief to the BIA, and did not elaborate on the alleged hardship that she would suffer if deported. The BIA did not abuse its discretion by concluding that Lolo Mamoka's continuous and blatant disregard for the immigration laws outweighed these positive equities.

We reject Lolo Mamoka's contention that the BIA abused its discretion by attributing to her the misconduct of her sons. The BIA expressly stated that "the adverse factors in the children's case can have reference to their case alone and cannot be attributed to [Lolo Mamoka]." The BIA's decision was based on Lolo Mamoka's own conduct in facilitating the illegal presence of her sons after she had knowledge of their illegal entry.

Finally, Lolo Mamoka contends that the BIA failed to provide a reasonable explanation for departing from established precedent holding that preconceived intent generally will not result in the denial of an application for adjustment of status for an immediate relative of a United States citizen. This contention is based on the erroneous premise that the sole basis for the BIA's decision was her preconceived intent. The BIA noted that "preconceived intent is only one factor to be considered in exercising discretion on an adjustment application", and stated that Lolo Mamoka's

8

"preconceived intent was not the only adverse factor cited or apparent in the record."  The BIA's decision reflects that it also considered as adverse factors her attempt to smuggle her children into the United States and her complicity in their escape from immigration authorities in New York, as part of a pattern of continuous and voluntary circumvention of United States immigration laws.

III.

For the foregoing reasons, the petition for review is DENIED.